## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

POLLUTION CONTROL )
CORPORATION, )
                   )
        **Plaintiff,** )
                   )
**v.** )      **Case No. CIV-11-494-R**
                   )
**RENEGADE OILFIELD PRODUCTS,**)
**LLC.,** )
                   )
        **Defendant.** )

## ORDER

This matter comes before the Court on the Motion for Partial Summary Judgment, filed by Plaintiff, Pollution Control Corporation. Defendant responded in opposition to the motion and filed an Amended Partial Motion for Summary Judgment, to which Plaintiff responded. Plaintiff has also filed a Motion to Strike, or in the Alternative, Motion for Leave to File Sur-reply to which Defendant has responded. Having considered the parties' submissions, the Court finds as follows.

Plaintiff has exclusive licenses to make, use, sell and offer for sale products covered by three patents, Patent 5,647,412 ("the '412 patent"), Patent No. 7,673,658 ("the '658 patent"), and Patent No. 7,921,884 ("the '884 patent"). Plaintiff contends that Defendant, through its products, the Pumpkin and Great Pumpkin, has infringed on claims in each of these patents. Plaintiff alleges infringement by Defendant as a result of its making and selling the Pumpkin and Great Pumpkin of Claims 1, 2, 3, 4, 5, 9, 10, 11, 12, 13, 14, 17 and/or 18 of the '412 patent. Plaintiff alleges that Defendant through the Pumpkin has

infringed  Claim 1 of the '658 Patent and Claims 11, 12, and/or 15 of the '884 patent.

Plaintiff argues that it is entitled to summary judgment on its claims of infringement of Claim

1 of the '412 patent, Claim 1of the '658 patent, and Claims 11 and 15 of the '884 patent.

Defendant in turn, seeks summary judgment by arguing that no genuine issues of material

fact remain and the Court should find as a matter of law that its products did not infringe

Claims 1, 11, and/or 17 of the '412 patent, as well as all claims dependent on these

independent claims, Claim 1 of the '658 Patent, and all claims dependent on this independent

claim, and Claim 11 of the '884 Patent.  Defendant further contends that the '884 patent is

invalid based on prior art.

Summary judgment is proper only where the full record, including the pleadings,

depositions, answers to interrogatories, admissions, and affidavits demonstrates that there is

no genuine issue of material fact and that the moving party is entitled to judgment as a matter

of law.  Fed. R. Civ. P. 56(c).   All reasonable inferences to be drawn from the underlying

facts must be viewed in the light most favorable to the party opposing the motion, and any

doubt must be resolved in its favor.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

U.S. 574, 587 (1986).  In deciding a motion for summary judgment, the court does not weigh

the evidence; rather, it will determine only whether a genuine issues of material fact exists.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

A patent is infringed when a person "without authority makes, uses or sells any

patented invention, within the United States . . . during the term of the patent." 35 U.S.C. §

271(a).  To prove infringement, the patentee must establish, by a preponderance of the

2

evidence, that one or more claims of the patent read on the accused device literally or under the doctrine of equivalents. *See Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 261 F.3d 1329, 1336 (Fed. Cir. 2001). A two-step analysis is employed in making an infringement determination. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir.1995). First, the Court must construe the asserted claims to ascertain their meaning and scope. *See id.* The trier of fact must then compare the properly construed claims with the accused infringing product. *See Markman*, 52 F.3d at 976.

Infringement, whether literal or under the doctrine of equivalents, is a question of fact. *Schindler Elevator Corp. v. Otis Elevator Co.*, 593 F.3d 1275, 1281 (Fed.Cir.2010). For literal infringement, "every limitation set forth in a claim must be found in an accused product, exactly." *Southwall Technologies., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed.Cir. 1995). A product that does not literally infringe a patent claim may still infringe under the doctrine of equivalents if the differences between an individual limitation of the claimed invention and an element of the accused product are insubstantial. *See Warner–Jenkinson Co., Inc. v. Hilton Davis Chem.* Co., 520 U.S. 17, 24, 117 S. Ct. 1040, 137 L. Ed.2d 146 (1997).

The rule is not the same for infringement of claims expressed as means-plus-function limitations which applies to Claim 1 of the '412 patent.

> "[F]or an accused structure to literally meet a section 112, paragraph 6 means-plus-function limitation, the accused structure must either be the same as the disclosed structure or be a section 112, paragraph 6 "equivalent," i.e. (1) perform the identical function and (2) be otherwise insubstantially different with respect to structure." *Kemco Sales, Inc. v. Control Papers Co., Inc.*, 208

F.3d 1352, 1364 (Fed.Cir.2000) (citing *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1267 (Fed.Cir.1999)). "Under a modified version of the function-way-result methodology described in *Graver Tank & Manufacturing Co. v. Linde Air Products Co.*, 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (1950), two structures may be 'equivalent' for purposes of section 112, paragraph 6 if they perform the identical function, in substantially the same way, with substantially the same result." Id. (citing *Odetics,* 185 F.3d at 1267).

*Cobra Int'l., Inc. v. BCNY Int'l., Inc.*, 864 F.Supp.2d 1328, 1344-45 (S.D.Fla. 2012).

As noted, Defendant seeks summary judgment with regard to both independent claims and dependent claims. If an accused product does not infringe an independent claim, it also does not infringe any claim depending thereon. *See Wahpeton Canvas Co. v. Frontier, Inc*., 870 F.2d 1546, 1553 (Fed.Cir.1989). However, "[o]ne may infringe an independent claim and not infringe a claim dependent on that claim." *Monsanto Co. v. Syngenta Seeds, Inc.,* 503 F.3d 1352, 1359 (Fed.Cir.2007) (quotations omitted).

Finally, with regard to Defendant's contention that the '884 Patent is invalid, Defendant bears the burden of proof. The law presumes a patent to be valid; it is Defendant's burden to prove by clear and convincing evidence that the claims are invalid. 35 U.S.C. § 282; *Intel Corp. v. VIA Technologies., Inc*, 319 F.3d 1357, 1366 (Fed.Cir. 2003).

With these standards in mind, and in light of the Court's prior completion of step-one of the process, the construction of certain claims, the Court turns to consideration of parties' motions for summary judgment.

## Claim 1 of the '412 Patent

Plaintiff seeks summary judgment on Claim 1 of the '412 patent, arguing that there is no dispute that all claim limitations within Claim 1 of the '412 Patent are present in the Pumpkin and Great Pumpkin. Consideration of this claim revolves around two specific portions of Claim 1, both plead in the means plus function manner. Plaintiff contends that the Pumpkin and Great Pumpkin both have a "second means for receiving an unloading line" and a "means for closing said second means." Defendant contends that the Pumpkin and Great Pumpkin do not infringe on Claim 1 of the '412 Patent, because they are not identical nor do they perform the identical function in the same way as the elements of the patented device.

> Means-plus-function claim limitations "shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." 35 U.S.C. § 112, ¶ 6. During claim construction, the court must identify the claimed function and determine the corresponding structure disclosed in the specification. *IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1430 (Fed.Cir.2000). In order to prove literal infringement, the patentee must show "that the relevant structure in the accused device perform[s] the identical function recited in the claim and [is] identical or equivalent to the corresponding structure in the specification." *Lockheed Martin Corp. v. Space Sys./Loral, Inc.*, 324 F.3d 1308, 1320 (Fed.Cir.2003). If the relevant structure in the accused device is not identical to the corresponding structure in the specification, the test for § 112, ¶ 6 equivalence is whether the two structures "perform the identical function, in substantially the same way, with substantially the same result." *Kemco Sales, Inc. v. Control Papers Co.*, 208 F.3d 1352, 1364 (Fed.Cir.2000). Whether the relevant structure in the accused device is an equivalent is a question of fact. *IMS Tech.*, 206 F.3d at 1430.

*Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 312 Fed.Appx. 326, 331 (Fed.Cir. 2009).

## "Second Means for Receiving an Unloading Line"

Claim 1 of the '412 Patent reads:

> 1. An apparatus for containing spillage at a line connection, the apparatus comprising:
> a container having a bottom and an upstanding sidewall whereby the spillage is retained in said container as it is spilled, said container having an open top end;
>
> wherein the apparatus includes a first means for receiving a loading line;
>
> wherein *said upstanding sidewall* includes a **second means for receiving an unloading line**;
>
> a lid for closing said open top end of said container when the unloading line is removed from the apparatus; and **means for closing said second means** when the unloading line is removed from the apparatus, said means for closing is attached to said lid.

Following the claim construction hearing, the Court construed **"a second means for receiving an unloading line"** under the means plus function approach and identified the function as receipt of an unloading line. From the specification the Court identified two structures designated to accomplish receipt of the unloading line. First, an opening of any suitable size or shape that allows the lines to be received within the container and second, Plaintiff's preferred embodiment, a U-shaped opening in communication with the open top end of the container. The Court concluded that the opening must be in the upstanding sidewall; however, Plaintiff was not limited to its identified preferred embodiment.[1]

---

[1] Plaintiff contends that any argument by Defendant that the open top end is not sufficient to constitute both an "open top end" and a "second means" opening must be rejected, because there is no requirement that separate claim limitations "be found in separate components of an accused device." Motion for Summary Judgment at p.17. Accordingly, Plaintiff contends it is entitled to summary judgment with regard to Claim 1 of the '412 Patent even though the "second means" and the "open top end" are not distinct components.

(continued...)

The Court finds that with regard to the first test for literal infringement, i.e., whether the relevant structure in the accused devices, the Pumpkins, is *identical* to the corresponding structure in Claim 11 '412 Patent, that Defendant is entitled to summary judgment.  In order for the structure of the Pumpkin and Great Pumpkin to be identical to that in Claim 11 of the patent, there must be an opening in the upstanding sidewall distinct from the open top end of the container.  The open top end of the container is identified in Claim 1 as a separate element, and it would be impossible for a jury to find that the open top end and the second means in the upstanding sidewall are read by the lowered sidewall of the Pumpkin and Great Pumpkin.  Furthermore, although Plaintiff attempts to characterize the lowered sidewall as a "u-shaped" opening, the Court concludes that no reasonable jury would agree.  Additionally, Plaintiff's expert characterizes the upstanding sidewall of the Pumpkin and Great Pumpkin as lowered, which is appropriate, however, unlike the apparatus identified in Claim 1 of the '412 patent, there is no opening in the upstanding sidewall distinct from the open top end.  Because the elements identified by Claim 1 are not all present in the Pumpkin and Great Pumpkin, the Court finds that no issues of fact remain, and that no reasonable jury could conclude, that Claim 1 is infringed under the first test for literal infringement under 35 U.S.C. § 112, ¶ 6.

The Court finds, however, that genuine issues of material fact remain for resolution

---

[1](...continued)
However, "equivalency can exist when separate claim limitations are combined in a single component of the accused device."  *Dolly, Inc. V. Spalding & Evenflo Companies, Inc*, 16 F.3d 394, 398 (Fed.Cir. 1994).

To the extent Plaintiff complains about Defendant's reliance on the affidavit of Paul Falgout, its objections are unfounded.  The observations offered by Mr. Falgout were not such that they needed to be made by an expert.

at trial with regard to whether the Pumpkin and Great Pumpkin infringe Claim 1 under the second test for literal infringement under 35 U.S.C. § 112, ¶ 6; whether the lowered sidewalls of the Pumpkin and Great Pumpkin perform the identical function in substantially the same way with substantially the same results as an opening of suitable size or shape that allows the lines to be received into the container.   A jury may reasonably conclude that the way in which the lowered sidewall of the Pumpkin and Great Pumpkin perform the function of receipt of an unloading line is not substantially the same as the distinct opening in the upstanding sidewall of the claimed apparatus.   Plaintiff's expert noted that the '412 patent method would not permit the lateral movement of an unloading line placed therein, and the same is not true with regard to the Pumpkin and Great Pumpkin.   The front wall portion of the upstanding sidewalls of the Pumpkin and Great Pumpkin are lowered.   However, a reasonable jury could find there is no second means in the upstanding sidewall, rather, the Pumpkin and Great Pumpkin perform the receipt function by permitting access by laying the unloading line on top of the upstanding sidewall and that this difference is not insubstantial.

**"Means for closing said second means"**

The Court further concludes that genuine issues of material fact remain with regard to whether the Pumpkin and Great Pumpkin have a "means for closing said second means" under the second method for proving literal infringement under 35 U.S.C. § 112, ¶ 6.  The Court finds, however, that there are no genuine issues of material fact with regard to whether the structures of the Pumpkin and Great Pumpkin are identical to those identified in the '412 Patent.  Again, there is no second means in the upstanding sidewall and therefore no means for closing said second means that is identical to that identified in the specifications of the '412 Patent.  However, for the same reasons set forth above, the Court finds that the jury as the finder of fact must determine whether the Pumpkin and Great Pumpkin have equivalents of a second means for closing the second means, construed by the Court as an extension member of any size or configuration sufficient to cover the opening for the unloading line, and therefore summary judgment is inappropriate for either Plaintiff or Defendant with regard to Plaintiff's 35 U.S.C. § 112, ¶ 6 claims.

**After-arising Technology**

Defendant contends Plaintiff cannot assert 35 U.S.C. § 112, ¶ 6 structural equivalence because Plaintiff has not established that Defendant's Pumpkin and Great Pumpkin were available at the time of issuance of the patent.

> "[A] structural equivalent under § 112 must have been available at the time of the issuance of the claim." *Al–Site* [*Corp. v. VSI International, Inc.*.], 174 F.3d [1308,] 1320 [(Fed. Cir. 1999)].; *Chiuminatta* [*Concrete Concepts, Inc. v. Cardinal Industries, Inc.*, 145 F.3d 1303 (Fed.Cir. 1998)].  Therefore, if the structure of the accused device **incorporates technology** developed after the patent was issued, it is, by definition, not a § 112, ¶ 6 structural equivalent and

does not literally infringe. *Al Site*, 174 F.3d at 1320. However, such "after-arising" technology may still infringe under the Doctrine of Equivalents. *Id.*; *see also Ishida Co. Ltd. v. Taylor*, 221 F.3d 1310, 1317 (Fed.Cir.2000) ("The doctrine of equivalents might come into play to determine infringement of a means-plus-function claim element if the accused device features technology that has arisen since the time of patent issuance.").

*Itron, Inc. v. Benghiat*, 169 F.Supp.2d 1073, 1094 (D.Minn. 2001)(emphasis added). There is no evidence that the technology affiliated with the Pumpkin and Great Pumpkin was not available at the time of the '412 Patent issuance. There is no true technology distinction between the patented apparatus and the Pumpkin and Great Pumpkin, rather it is a configuration of elements within that technology. Accordingly, the Court concludes that Plaintiff is not prohibited from seeking relief from Defendant under a theory of 35 U.S.C. § 112, ¶ 6 structural equivalence.

## Claims 11 and 17 of the '412 Patent

In its motion for summary judgment, Defendant seeks a determination of non-infringement with regard to Claims 11 and 17 of the '412 Patent and all claims dependent from these two independent claims. Defendant contends that the Pumpkin and Great Pumpkin both lack an opening defined therethrough and an extension member attached to the lid to cover any such opening as required to infringe on these claims.

Claim 11 reads:

> An apparatus for containing spillage at a line connection, the apparatus comprising: a container having a bottom and an upstanding sidewall whereby the spillage is retained in said container as it is spilled, said container having an open top end; wherein the apparatus includes means for receiving a loading line; wherein said upstanding sidewall includes having an **opening defined therethrough** for receiving an unloading line; a lid for closing said open top end of said container when the unloading line is removed from the apparatus;

and an extension member attached to said lid for covering said opening when the unloading line is removed from the apparatus and said lid is closed on said container.

The Court previously construed "opening defined therethrough" as requiring that the container have an opening through the sidewall. "The term 'therethrough' set forth in the specification indicates that the upstanding sidewall has an opening through it, it does not mean that the top opening can function both as the opening for the container and as the opening in the sidewall through which the unloading line passes." Markman Order, p. 14.

The Court finds that no genuine issues of material fact remain for resolution at trial with regard to Claim 11 of the '412 Patent. As noted, to find that an accused product literally infringes a patent claim, "'every limitation of the patent claim [must] be found in the accused device.'" *Wenger Mfg., Inc. v. Coating Mach. Sys., Inc*., 239 F.3d 1225, 1231 (Fed Cir.2001) (internal quotations and citations omitted). Claim 11 is very specific with regard to the placement of the opening for receipt of the unloading line, as noted by the Court's construction. No reasonable jury could find that the Pumpkin has an opening through the upstanding sidewall, literally, by any interpretation. Accordingly, Defendant is entitled to summary judgment on the issue of literal infringement.

Furthermore, with regard to the doctrine of equivalents, the Court finds that Defendant is entitled to summary judgment with regard to Claim 11. As noted by the court in *Zodiac Pool Care, Inc. v. Hoffinger Indus., Inc.*, 206 F.3d 1408, 1416 (Fed. Cir. 2000), this patent contains clear structural limitations, "and if the Court were to conclude that a jury could find infringement under the doctrine of equivalents in this case, a verdict of infringement under

11

the DOE would reduce the claims to nothing more than the 'functional abstracts, devoid of meaningful structural limitations on which the public could rely.'" *Id.* at 1416 (quoting *Sage Products, Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1424 (Fed. Cir. 1997)); *see also Cooper Cameron Corp v. Kvaerner Oilfeild Products, Inc*, 291 F.3d 1317, 1322 (Fed. Cir. 2002)("the workover port in [defendant's] accused device enters the wellhead assembly 'above' the two plugs, which cannot be equivalent to a connection 'between the two plugs.'"); *Asyst Technologies, Inc. v. Emtrak, Inc.*, 402 F.3d 1188, 1195 (Fed.Cir. 2005)("To hold that "unmounted" is equivalent to "mounted" would effectively read the "mounted on" limitation out of the patent.").[2]  Because there is no opening through the upstanding sidewall, and because this structural limitation is clear, the Court concludes Plaintiff cannot prevail on its claim of infringement under the doctrine of equivalents with regard to Claim 11 of the '412 Patent, and summary judgment is granted in this regard.[3]  Furthermore, because the Court concludes that the Pumpkin and Great Pumpkin do not infringe Claim 11 of the '412 patent, they similarly do not infringe those claims dependent on Claim 11, specifically Claims 12 through 16.  *See Jeneric/Pentron, Inc. v. Dillon Company, Inc.*, 205 F.3d 1377, 1383 (Fed.Cir.2000) ("dependent claims cannot be found infringed unless the claims from which

---

[2] From the Court's perspective the language of Claims 11 and 17 of the '412 patent, which very clearly specifies an opening therethrough, precludes the application of the doctrine of equivalents.  The Court finds, however, that the language of the remaining claims at issue does not impose the structural limitation of Claims 11 and 17 of the '412 patent in the same manner so as to preclude a finding of infringement of any of those claims under the doctrine of equivalents.

[3] That Defendant did not address each element of Claim 11 is not relevant to the outcome on summary judgment in its favor, which requires a showing that no genuine issues of material fact remain with regard to any one element.  That is, because the Pumpkin and Great Pumpkin do not have an opening through the upstanding sidewall, regardless of whether they are otherwise identical to apparatus in the patent, they do not infringe thereon.

they depend have been found to have been infringed.")(citing *Wahpeton Canvas Co., v. Frontier, Inc.*, 870 F.2d 1546, 1553 (Fed.Cir.1989)).

Defendant also seeks summary judgment with regard to Claim 17 of the'412 patent.

Claim 17 provides:

17. An apparatus for containing spillage at a line connection, the apparatus comprising:
   a container having a bottom and an upstanding sidewall whereby the spillage is retained in said container as it is spilled, said container having an open top end;
wherein the apparatus includes means for receiving a loading line;
wherein said upstanding sidewall includes **having a generally U-shaped opening defined therethrough** for receiving an unloading line, said opening is in communication with said open top end of said container;
a lid for closing said open top end of said container when the unloading line is removed from the apparatus; and
**an extension member** attached to said lid for covering said opening when the unloading line is  removed from the apparatus and said lid is closed on said container.

The Pumpkin and Great Pumpkin also do not infringe on Claim 17, which requires not only an opening through the upstanding sidewall, but a U-shaped one.  There is no reasonable basis from which a jury could conclude that there is a opening through the upstanding sidewall, much less a U-shaped opening as required by Claim 17.  Accordingly, there is no literal infringement, and for the reasons set forth above with regard to Claim 11, no infringement under the doctrine of equivalents.  Defendant's motion for summary judgment is granted with regard to Claim 17 and the claims dependent thereon, specifically Claims 18 through 20 of the '412 patent.[4]

---

[4] As a result the Court concludes that it need not consider whether the Pumpkin and Great Pumpkin have "extension members attached to said lid."

**The '658 Patent**

Plaintiff also seeks summary judgment with regard to Claim 1 of the '658 Patent with regard to the alleged infringement by Defendant by virtue of the Pumpkin.  Plaintiff contends the Pumpkin infringes both literally and under the doctrine of equivalents.  Defendant contends genuine issues of material fact remain for resolution at trial, or alternatively, in its motion, Defendant seeks a determination of non-infringement with regard to Claim 1 and all claims dependent on Claim 1, specifically Claims 2 through 20.

Claim 1 of the '658 Patent with the claim term at issue in bold, is as follows:

1. An injection molded load line connection spillage container for catching and retaining liquid spilled when liquids are pumped between storage tanks and tankers, wherein the transfer line from the storage tank is characterized as a load line and the transfer line from the tanker is characterized as an unloading line, the load line connection spillage container comprising: an injection molded reservoir having a bottom and upstanding walls defining an opening therein, the upstanding walls being further characterized as a rear upstanding wall portion, a front upstanding wall portion, a left upstanding wall portion, and a right upstanding wall portion, the rear upstanding wall portion having a load line throughway therein and the front upstanding wall portion having a **channel** therein generally aligned with the load line throughway in the rear upstanding wall portion, and wherein reinforcing ribs are molded into the rear upstanding wall portion; wherein the upstanding wall portions terminate in an outwardly turned J-shaped lip containing integrally molded gussets to strengthen and reinforce the reservoir opening, the J-shaped lip having an integrally molded lock recess and a bore therethrough; an injection molded reservoir cover having a circumferential lip and an integrally molded lock bracket on the circumferential lip, so that the integrally molded lock bracket on the lip mates with the integrally molded lock recess on the reservoir and the bores in the molded lock bracket of the reservoir cover and in the integrally molded lock recess are aligned when the reservoir cover is placed on the reservoir; hinge means for hingedly attaching the reservoir cover to the reservoir; and wherein, with the reservoir cover open, the load line from the storage tank is received through the load line throughway in the rear upstanding wall portion, the unloading line from the tanker is received in the **channel** in the front upstanding wall portion, and the connection between the

14

load line from the storage tank and the unloading line from the tanker is made
within the reservoir so any spillage is caught and retained within the reservoir.

United States Patent No. 7,921,884.  The Court previously construed the term "channel" to

mean "a groove of sufficient depth and size to permit insertion of the unloading line."

> The specification cited by Defendant notes that the channel is located in the
> front upstanding wall, and that it is sized to receive a transfer line.
> Furthermore, a channel is defined as a groove, consistent with the Court's
> construction.  See www.thefreedictionary.com/channel.  Nothing in the claim
> or the specification, however, limits the channel's shape to "U-shaped," as
> proposed by Defendant.  Additionally, because the claim indicates the channel
> is located in the front upstanding wall, the Court need not incorporate this
> limitation into its construction of the term "channel."

Markman Order at p. 19.  Plaintiff contends the Pumpkin's lowered side and front sidewall

portions form a groove of sufficient depth and size to permit insertion of the unloading line,

thereby literally infringing on Plaintiff's patent literally.  Defendant argues that "[r]egardless

how many time PCC attempts to categorize the Pumpkin as having lowered sidewall portions

it does not change the fact that the Pumpkin has an angled, open top end and no channel or

groove in the sidewall."  Response to Motion for Summary Judgment, p. 20.

Again, literal infringement requires the presence of every limitation of the patent

claim in the accused device, and the Court finds that the characterization of the lowered front

sidewall as forming "a groove of sufficient depth and size to permit insertion of the unloading

line," Tipton Declaration, ¶ 27, is insufficient to fulfill the requirements of the  claim, which

mandates the "front upstanding wall portion having a channel therein" and that the unloading

line from the tanker is received in the channel in the front upstanding wall portion."

Accordingly, in order to infringe literally on Claim 1 of the '658 patent, the channel must be

located "in the front upstanding wall." Markman Order, p. 18. The Court concludes that even if a jury could find that the lowered front wall portion of the Pumpkin itself constitutes a groove of sufficient depth and size to permit insertion of the unloading line, no reasonable jury could find that the groove is in the front upstanding wall of the Pumpkin. Rather, the upstanding sidewall permits an unloading line to be set on the wall, permitting the connection between the loading and unloading line. Accordingly, Plaintiff is not entitled to summary judgment on its theory that the Pumpkin literally infringes Claim 1 of the '658 Patent, but Defendant is so entitled.

Plaintiff alternatively argues that the Pumpkin infringes Claim 1 of the '658 Patent pursuant to the doctrine of equivalents. As stated previously, "the doctrine of equivalents allows the patentee to claim those insubstantial alterations that were not captured in drafting the original patent claim but which could be created through trivial changes. An element in the accused device is equivalent to a claim limitation if the only differences between the two are insubstantial ." *Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1139 (Fed. Cir. 2004). Plaintiff's expert opines that the "lowered front sidewall portion allows the Pumpkin to perform the same function (permit insertion of an unloading line) in substantially the same way (by lowering the front sidewall portion) to obtain the same result (a clear or direct passage to the loading line or threaded pipe) as the channel" in Claim 1 of the '658 patent and is therefore an equivalent of the channel." Tipton Declaration, ¶ 28. Defendant's expert contends that "the different result and the different function of Defendant's device is because it operates in a <u>different way</u>. Particularly, the disclosed and claimed invention

receiving engages the unloading line via an opening in the upstanding wall, whereas Defendant's device deceivingly engages the unloading line via the open top end."  McCarthy Declaration, p. 55.  Defendant additionally contends Plaintiff is seeking a benefit to which it is not entitled, specifically to vitiate a claim limitation.

The Federal Circuit recently explained the concept of vitiation and the doctrine of equivalents in *Deere & Co. v. Bush Hog, LLC*, --- F.3d ----, 2012 WL 6013405, *4-5 (Fed. Cir. Dec. 4, 2012).

> The concept of vitiation derives from the requirement that the doctrine of equivalents must be applied to the claims "on an element-by-element basis," so that every claimed element of the invention—or its equivalent—is present in the accused product. *Warner–Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997). Of course, in every case applying the doctrine of equivalents, at least one claimed element is not literally present in the accused product. The question is "whether an omitted part is supplied by an equivalent device or instrumentality." *Id*. at 32, 117 S.Ct. 1040 (quoting *Hubbell v. United States*, 179 U.S. 77, 21 S.Ct. 24, 45 L.Ed. 95 (1900)). Thus, the doctrine of equivalents, by its very nature, assumes that some element is missing from the literal claim language but may be supplied by an equivalent substitute.
>
> ***
>
> "Vitiation" is not an exception to the doctrine of equivalents, but instead a legal determination that "the evidence is such that no reasonable jury could determine two elements to be equivalent." *Id.* The proper inquiry for the court is to apply the doctrine of equivalents, asking whether an asserted equivalent represents an "insubstantial difference" from the claimed element, or "whether the substitute element matches the function, way, and result of the claimed element." *Id.* at 40, 117 S.Ct. 1040. If no reasonable jury could find equivalence, then the court must grant summary judgment of no infringement under the doctrine of equivalents. *Id.* at 39 n. 8, 117 S.Ct. 1040.

The Court finds that a reasonable jury could find that the lowered front sidewall, while not a channel, nevertheless represents an insubstantial difference from the channel in Claim 1 of

the '658 patent.  As a result, the Court finds that genuine issues of material fact remain for resolution at trial on the issue of infringement under the doctrine of equivalents with regard to Claim 1 and its dependent claims and the '658 Patent.

## '884 Patent

Finally, Plaintiff seeks summary judgment with regard to its claims of infringement with regard to Claims 11, 12, and 15 of the '884 Patent.  Plaintiff contends there is both literal infringement and infringement under the doctrine of equivalents.  Defendant seeks summary judgment with regard to Claim 11 of the '884 Patent and further seeks a determination that if the Court concludes that the "saddle" element of the Pumpkin fulfills the flange limitation of Claim 11, that Claim 11 of the '884 Patent is invalid in view of prior art and Plaintiff's prior art product.

The issue with regard to Claim 11 of the  '884 Patent revolves around the term "flange," which the Court previously construed to mean "a collar or rim protruding from the pipe for purpose of attachment to another object."  Markman Order at p. 18.  According to Plaintiff, "[t]he Pumpkin includes a plate protruding from the pipe that attaches to the rear sidewall portion in order to secure the pipe in the rear sidewall portion opening."  Motion for Summary Judgment, p. 26.  As a result, Plaintiff contends there is literal infringement of Claims 11, 12 and 15 of the '884 Patent.[5]  Alternatively, Plaintiff argues that the Pumpkin's

---

[5] Claim 11 provides:
An injection molded load line connection spillage container for catching and retaining liquid spilled when liquids are pumped between storage tanks and tankers, wherein the transfer line from the storage tank is characterized as a load line and the transfer line from the tanker is characterized as an unloading line, the load line connection spillage container comprising:

(continued...)

plate is the equivalent of a "flange" and therefore the Pumpkin infringes on the '884 Patent.

Plaintiff contends that because Claims 12 and 15 are dependent on Claim 11 and because the

Pumpkin infringes Claim 11, that Plaintiff is entitled to summary judgment with regard to

its claim of infringement of those claims as well, the limitation of Claim 12 being that the

flange must be "positioned on the pipe between the threaded pipe ends," which the Pumpkin

has.  Plaintiff further contends that Claim 15's requirement of a cleanout assembly attached

to the pipe of the load line is present in the Pumpkin.

Defendant argues that the Pumpkin does not infringe Claim 11 of the '884 patent in

---

[5](...continued)
an injection molded reservoir having a bottom and upstanding walls defining an opening therein, the upstanding walls being further characterized as a rear upstanding wall portion, a front upstanding wall portion, a left upstanding wall portion, and a right upstanding wall portion, the rear upstanding wall portion having a load line throughway therein and the front upstanding wall portion having at least a section thereof that is lower than the rear upstanding wall portion; reinforcing ribs molded into the rear upstanding wall portion; an injection molded reservoir cover; hinge means for hingedly attaching the reservoir cover to the reservoir; a load line mounting assembly comprising a plurality of throughway bores adjacent to the load line throughway in the rear upstanding wall portion and a pipe comprising threaded pipe ends and a **flange** attached to the pipe, the **flange** having a plurality of spaced **flange** bores, so one threaded pipe end extends through the throughway to the exterior of the rear upstanding wall portion, the **flange** bores mate with the throughway bores to receive fasteners which secure the **flange** to the reinforced rear upstanding wall portion and the other threaded pipe end extends into the reservoir; and wherein, with the reservoir cover open, the load line from the storage tank is received by the threaded pipe end extending to the exterior of the rear upstanding wall portion through the load line throughway, the unloading line from the tanker is received atop the lowered section of the front upstanding wall portion and is connected to the threaded pipe end extending into the reservoir, and the connection between the load line from the storage tank and the unloading line from the tanker is made within the reservoir so any spillage is caught and retained within the reservoir.
Claim 12 indicates "wherein the flange is positioned on the pipe between the threaded pipe ends." Claim 15 claims "[t]he device of claim 11, further comprising a cleanout assembly attached to the pipe of the load line mounting assembly, the cleanout assembly further comprising: a valve connected at one end by pipe fittings to the pipe of the load line mounting assembly and at the other end to a suction line extending from the valve to just above the bottom of the reservoir such that, while the unloading line is in place and a pump is pumping tank contents from the storage tank into the tanker, opening of the valve causes any liquid which has accumulated in the reservoir to be transferred to the tanker."

either manner and contends that it does not have a flange, but rather a saddle, which is included in Claim 7 of the '884 patent, which is not at issue herein.  Defendant contends Plaintiff is attempting to re-characterize the Pumpkin's saddle as a flange, which is inappropriate, and that it is entitled to a judgment of non-infringement.

The Court again concludes Defendant is entitled to summary judgment on the issue of literal infringement, but that genuine issues of material fact remain for resolution at trial with regard to the doctrine of equivalents.  The Court defined flange as a collar or rim, and did not specifically indicate the location thereof.  Figures 7 and 8 of the '884 Patent, however, indicate the flange as being located inside the container, rather than outside, although the flange bores are connected through the rear upstanding wall.  There is no evidence that the Pumpkin has any collar or rim on the interior of the container attached to the interior of the rear upstanding sidewall equivalent to a "flange."  With regard to equivalency, however, the Court finds that a reasonable jury could conclude that the items identified by Plaintiff's expert fulfill the requirements of the flange, specifically with regard to that version of the Pumpkin shown in Exhibit 27 to Mr. Tipton's declaration, that it performs the same function in nearly the same manner as the flange, that is it functions as a rim or collar protruding from the pipe for purpose of attachment to another object.  Accordingly, the Court concludes summary judgment is inappropriate under the doctrine of equivalents with regard to Claim 11 of the '884 patent.  Furthermore, because the Court concludes summary judgment is inappropriate with regard to Claim 11 of the '884 Patent, it is similarly not appropriate for claims dependent on Claim 11.

**Invalidity**

Defendant's request for summary judgment with regard to invalidity is hereby DENIED.  As noted by Plaintiff, Defendant failed to articulate a specific theory of invalidity, rendering a decision in its favor impossible at this juncture.  Defendant has not met its burden of establishing invalidity by clear and convincing evidence nor has it adequately addressed the issue so as to permit the Court to properly consider this argument.

**Motion to Strike**

Finally, the Plaintiff's Motion to Strike or, Alternatively, Motion for Leave to File a Surreply is hereby granted.  The Court will not consider the prosecution history estoppel argument made by Defendant for the first time in its reply brief in an effort to avoid application of the doctrine of equivalents.  Despite Defendant's contention that Plaintiff raised the issue, Defendant's amended motion addresses, albeit in a perfunctory manner, the doctrine of equivalents without ever asserting that the doctrine of equivalents is not appropriate in light of prosecution history estoppel.  Amended Motion for Summary Judgment,  pages 6, 7, 13 and 16 (setting forth the test for doctrine of equivalents and arguing, without additional discussion, that its products do not demonstrably infringe Plaintiff's patents, either literally or under the doctrine of equivalents).  Plaintiff's request for leave to file a sur-reply, however, is DENIED, because no additional briefing is necessary.

For the reasons set forth herein, the Plaintiff's motion for summary judgment is denied.  Defendant's motion for summary judgment is granted to the limited extent that the Court concludes as a matter of law that: (1) the Pumpkin and Great Pumpkin are not identical

to the structure in Claim 1 of the '412 patent for purposes of 35 U.S.C. § 112, ¶ 6; (2) the

Pumpkin and Great Pumpkin do not infringe Claims 11 and 15 of the '412 Patent either

literally or under the doctrine of equivalents; (3) The Pumpkin does not literally infringe

Claim 1of the '658 Patent; and (4) the Pumpkin does not literally infringe Claims 11 and 17

of the  '884 Patent.  The motions for summary judgment are otherwise denied.

IT IS SO ORDERED this 16th day of January, 2013.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE